USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/18/2018

STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN A. BARTOLINI,

                          Plaintiff,

     -against-

INSPECTOR VINCENT CASSELS, INSPECTOR
THOMAS KRAMER, WESTCHESTER COUNTY
DEPARTMENT OF CONSUMER PROTECTION,
and ADMIN. LAW JUDGE JAY HASHMALL,

                          Defendants.

No. 17-cv-5671 (NSR)(PED)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff John A. Bartolini ("Plaintiff" or "Bartolini") commenced the instant action against Defendants Westchester County Department Of Consumer Protection ("WCDCP"), WCDCP Inspector Vincent Cassels ("Insp. Cassels") and Inspector Thomas Kramer ("Insp. Kramer"), and Administrative Law Judge Jay Hashmall[1] ("ALJ Hashmall") (collectively referred to as ("Defendants") asserting claims sounding in violations of 42 U.S.C. § 1983. Now before the Court is Defendants' motion to dismiss pursuant to, *inter alia*, Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint, and documents referenced or attached thereto, and are taken as true for the purposes of resolving the instant motion. The Court liberally interprets the Complaint.

---

[1] Plaintiff asserts that Jay Hashmall is partner at the firm of Bank, Sheer, Seymour & Hashmall, LLP and suggests he may not be a full-time employee of WCDCP.

1

Plaintiff operates a full service landscaping company and provides commercial snow removal services, under the name of Bartolini and Son's Lanscaping Inc. ("BSL"), in Westchester County. In or about December 2013, Plaintiff submitted an application on behalf of BSL to the WCDCP to renew the home improvement license. A home improvement license permits a licensee to provide snow removal and landscaping services. Plaintiff listed himself as the president of the company and his "infant son" as owner of all outstanding shares of the corporation.

On March 13, 2014, Plaintiff was notified that the renewal application was denied on the basis that the owner of the corporation, a minor, did not qualify to operate a home improvement business. Plaintiff requested and was granted a hearing (on the record) on behalf of BSL to challenge the denial of the renewal application. On July 14, 2014, BSL appeared via counsel, Jonathan Lovell, Esq., before WCDCP ALJ Hashmall seeking to overturn the denial of the renewal application.

In a written decision, dated July 30, 2014, ALJ Hashmall upheld WCDCP's denial of the renewal application. The ALJ noted in his decision that pursuant to the Westchester County Code, WCDCP is authorized to promulgate rules and procedures "to carry out the provisions of the Home Improvement Licensing Code," which may include requiring "that an owner of a licensed [home improvement] company not be an infant, be legally responsible, and [requiring that the applicant] take and pass the Home Improvement Licensing Exam." The sole owner of the outstanding shares of the corporate applicant, BSL, was a minor, born on April 30, 2005. "A nine year old infant lacks the capacity to contract in the State of New York and is not a legally responsible person." Additionally, "the owner of the corporation" seeking a license "is required to take and pass the Home Improvement Licensing Exam."

2

Plaintiff asserts WCDCP's denial of the license was unjust and not based in law. He alleges or suggest that the denial of the renewal application is part of a longstanding and ongoing conspiracy, a "vendetta," to deny him procedural due process. Plaintiff cites to multiple prior acts by WCDCP employees or representatives as indicative of the conspiracy.

**Prior Incidents**

**Kane Incident**

On or about, October 2006, Plaintiff threatened to commence a lawsuit against one of his clients, Jane Perez Kane ("Kane")[2] for nonpayment. In response to his threat, Kane filed a complaint against Plaintiff with WCDCP. Kane's complaint was assigned to Insp. Cassels to investigate. Insp. Cassels telephoned Plaintiff regarding Kane's allegation, and informed if Plaintiff followed through on his threat to sue Kane, he would issue multiple violations against Plaintiff.

On November 22, 2006, Plaintiff sued Kane for failure to pay for services rendered.[3] Upon being served with process, Kane filed a complaint for harassment with the Yorktown Police Dept. On November 28, 2006, Insp. Cassels issued three violations against Plaintiff. At the time the violations were issued, Plaintiff was operating under the name of Bartolini Landscaping, Inc. ("BL"), the predecessor to BSL.[4] The Complaint suggest the violations were issued to BL.

On January 25, 2007, after a hearing before an administrative law judge, BL was found guilty of all three violations, including failing to disclose the home improvement license number on the merchant invoice/receipt, and fined three thousand dollars ($3,000.00). Plaintiff asserts

---

[2] Kane is not a named party to this action.
[3] Plaintiff alleges he was awarded a judgment in his civil lawsuit against Kane.
[4] According to the Complaint, Plaintiff ceased operating under the name of Bartolini Landscaping, Inc. in 2012.

there is no legal requirement that a contractor place his license number on the invoices. Plaintiff also suggest that he appealed or sought reconsideration of the fine. At a hearing presided over by WCDCP Deputy Director Richard Linkowski ("Dir. Linkowski"),[5] Plaintiff's appeal or request for reconsideration was denied on the basis that WCDCAP had the authority to require home improvement contractors to have their license number on their invoices. In conclusory fashion, Plaintiff asserts that Insp. Cassels and Insp. Kramer "run the show [from] behind the curtain" at WCDCP. Sometime thereafter, Plaintiff instituted an Article 78 proceeding which reversed the decision issued by WCDCP and Dir. Linkowski.[6]

**Rella Incident**

In 2008, Plaintiff was retained by Gil Rella ('Rella')[7] to "install 12 extremely large and heavy evergreens and a Cherry tree in Yorktown Heights. Close to the end of the summer, one of the evergreens died due to Rella's failure to properly water the tree as directed. On October 27, 2008, Rella filed a complaint with the WCDCP against Plaintiff. The complaint was assigned to Insp. Cassels, who forwarded a copy of Rella's complaint to Plaintiff. Insp. Cassels spoke to Plaintiff and told him to "work it out with Rella or it would not be good for [Plaintiff]." Plaintiff made several attempt to resolve Rella's complaint but was unsuccessful.

On January 20, 2009, Rella commenced a small claims action against Plaintiff in Yorktown Heights Civil Court. Plaintiff was willing to compensate Rella for the cost of a replacement tree but his offer was refused. A trial was held and Plaintiff was directed to pay half of the damages originally sought by Rella.

---

[5] Linkowski is not a named party to the action.
[6] Plaintiff does not attach a copy of the decision issued in the Article 78 proceeding in support of his contention.
[7] Rella is not a named party to this action.

On February 9, 2009, following Rella's complaint to the WCDCP, Insp. Cassels issued five violations against BL for, *inter alia*, failing to "include required notices on a contract" and failing "to honor a warrantee." On March 10, 2009, a hearing was held at WCDCP before ALJ Jay Howard ("ALJ Howard").[8] Present at the hearing was Insp. Cassels and Rella. ALJ Howard informed that the hearing would be limited to the notice deficiencies in the contract and would not include Rella's complaint regarding Plaintiff's alleged failure to abide by the warrantee. At the hearing, Insp. Cassels introduced multiple documents, including a copy of an allege contract, over Plaintiff's objection. Plaintiff's objection was based upon the failure to provide him a copy of the contract. Plaintiff further claims he was denied the opportunity to review any of the documents during the hearing. Due to his "firm yet reasonable objections," Plaintiff was ejected from the hearing room.

In Plaintiff's absence, ALJ Howard completed the hearing, found BL guilty of all four violations, and issued a four-thousand dollar ($4,000.00) fine. Plaintiff made a FOIL request to obtain copies of the documents submitted during the hearing which purportedly supported the finding of guilt but no documents were produced. Plaintiff also claims that he unsuccessfully filed an Article 78 proceeding in state court challenging the ALJ's finding and fines.[9]

**Vertucci Incident**

In August 2011, Plaintiff sued former client Debbie Vertucci ("Vertucci")[10] of Mahopac, New York in Putnam County, for nonpayment for landscaping serviced rendered. An individual named Frank, described as a debt collector, attempted to settle the claim on behalf of Vertucci. Following Plaintiff's refusal to settle, Frank "began an anonymous Internet libel campaign [of

---

[8] ALJ Howard is not a named party in the action.

[9] A copy of the decision in the Article 78 proceeding was not provided.

[10] Vetucci is not a named party to the action.

harassment] against Plaintiff" by posting negative and untrue information. Frank later escalated the attacks by filing written complaints against Plaintiff with WCDCP. Insp. Cassels called Plaintiff regarding Frank's complaints in an attempt to settle the Vertucci matter. When Plaintiff questioned Insp. Cassels regarding his lack of authority to investigate the dispute, which occurred in Putnam and not Westchester County, Insp. Cassels stated he was calling as a courtesy and ended the discussion.

Due to the campaign of harassment, negative internet posting, which impacted his business, and the stress associated with the incident, Plaintiff decided to withdraw his small claims lawsuit against Vertucci. Plaintiff also claims that in exchange for discontinuing his lawsuit, Frank agreed to remove the negative internet posting. Despite the agreement, Plaintiff claims that the negative internet postings remain.

**Other Incidents**

On May 2016, Plaintiff was issued two violations by the WCDCP for improper advertisement. Plaintiff suggest he was issued the two violations because he did not have a license. Plaintiff states the reason he did not have a license at the time is because WCDCP improperly denied his renewal application. Despite having knowledge of the violations, Plaintiff did not address the violations or attend the hearing. On July 27, 2016, a WCDCP ALJ found the Plaintiff guilty of the violations and assessed fines in the amount of $2,000.00. Plaintiff has yet to pay the fines.

On or about October 12, 2016, WCDCP Inspector Tony Pruit ("Insp. Pruit")[11] issued another violation against BL for operating a home improvement business without a license. Plaintiff suggests Insp. Pruit issued the violation upon observing an old street sign posting

---

[11] Insp. Pruit is not a named party to the action.

advertising his old company, BL. BL was dissolved in 2012. Plaintiff alleges he arranged to have new signs made listing his new business, BSL, but the entity he hired forgot to do so. Plaintiff did not respond to the violation. On November 16, 2016, Insp. Kramer, acting as an administrative law judge (also identified as the County Sealer), presided over a hearing, found Plaintiff guilty of the violations, and assessed a five thousand dollar ($5,000.00) fine against Plaintiff.

Plaintiff alleges that over the course of eleven years, the WCDCP has engaged in a systematic campaign to falsely prosecute Plaintiff, issue violations for non-existing laws, and has held or presided over "sham administrative hearings" that have adversely affected Plaintiff. Plaintiff suggest that he has been denied due process, and as a result has been injured emotionally and financially. Plaintiff fears he may be arrested due to his interaction with the WCDCP. As a result, Plaintiff seeks monetary damages and reversal of WCDCP's decision.

## LEGAL STANDARDS

### Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is properly raised by way of a 12(b)(1) motion. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010); *Alliance for Envt'l Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006). Without jurisdiction, the Court is devoid of the "power to adjudicate the merits of the case" and for that reason, a Court must decide a 12(b)(1) motion before any motion on the merits. *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

Plaintiff bears the burden to demonstrate standing by showing she is the "proper party to bring this suit" by a preponderance of the evidence. *Carter*, 822 F.3d at 55 (quoting *Raines v. Byrd*, 521 U.S. 811 (1997)); Morrison, 547 F.3d at 170 citing *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000). While a Court must accept all factual allegations in Plaintiff's complaint as true, a jurisdictional showing must be made affirmatively; "it is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison*, 547 F.3d at 170; see also *TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726, 733-34 (S.D.N.Y. 2011), aff'd, 503 F. App'x 82 (2d Cir. 2012).

Standing challenges pursuant to 12(b)(1) can be factual or facial. *Carter*, 822 F.3d at 56. A facial challenge considers the sufficiency of the allegations in the complaint. Id. A factual challenge, on the other hand, questions the existence of standing. Id. In such circumstances, the court may consider evidence outside the pleadings, but should not consider any "conclusory or hearsay statements contained in" the evidence. *TZ Manor*, 815 F. Supp. 2d at 733-34. Where a defendant provides evidence that controverts material factual allegations in the complaint, the court could, and should, make a factual determination as to the standing related allegations. *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

**Rule 12(b)(6)**

To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, a court should

accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Generally, a court may incorporate documents referenced where (1) plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed. See *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (A document is "integral," if the plaintiff has "(1) 'actual notice' of the extraneous information and (2) 'relied upon the documents in framing the complaint.'"); accord *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate [] that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in the original); see also *McLennon v. City of New York,* 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) ("To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'"); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.").

**42 U.S.C. § 1983 Claim**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C.

§ 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). A Section 1983 claim has two essential elements that must be pled and proved: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

## DISCUSSION

Defendants move to dismiss all claims asserted on behalf of the corporate entity BSL (and its predecessor, BL) on the basis Plaintiff lacks standing to sue. Movants assert the injured party, if any, is the corporate entity, not Plaintiff, who in the Complaint is identified as an officer of the corporation. Plaintiff opposes the motion on the basis that he is the aggrieved party.

To satisfy the most basic constitutional requirements of standing, a plaintiff must demonstrate (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) the "likel[ihood], as opposed to mere[ ] speculati[on], that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61(1992). Plaintiff alleges multiple instances of alleged misconduct by the Defendants. The latest incident involves BSL's attempt to renew its home improvement license. The initial application was denied, and following a hearing before ALJ Hashmall, the application was again denied in written a decision. Plaintiff also alleges multiple other incidents (Kane, Rella, Vertucci and others) wherein Plaintiff individually, BL or BSL were issued violations and fines, or subjected to threats.

10

Whether a business entity, such as a corporation, has the capacity to sue or be sued is to be determined by the law under which it is organized. Fed. R. Civ. P.§ 17(b); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 380 (S.D.N.Y. 1998), aff'd, 173 F.3d 843 (2d Cir. 1999). In New York, corporations have the capacity to sue and be sued in all courts and to participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in like cases as natural persons. N.Y. Bus. Corp. Law § 202(a)(2).

A corporation is a separate and distinct entity from its individual members or stockholders, and the distinction remains even when all of its stocks are owned by a single individual. See *Adler v. G & B Fasteners, Inc.*, 143 A.D.2d 614 (2nd Dept. 1988) (internal citations omitted). While a corporation has the ability to file suit, a corporation is not permitted to conduct litigation unless represented by counsel. See *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329 (2d Cir. 1986) citing *Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20, 22 (2d Cir. 1983).

Attached to and referenced in the complaint is a copy of ALJ Hashmall's decision denying the renewal application. Of noteworthy, the decision identifies the license applicant as "Bartolini and Son's Landscaping." BSL is not a named party in the action. Moreover, Plaintiff, a non-attorney, is an entity separate and apart from BSL. Accordingly, any and all claims asserted on behalf of the corporate entity BSL (and its predecessor, BL), are deemed dismissed without prejudice.[12]

Defendants move to dismiss those claims which seek review or reconsideration of the administrative decisions including violations and fines issued by WCDCP. Defendants assert

---

[12] The Court notes that Plaintiff's minor son, the sole shareholder of BLS, is not named as a party to this action. It is well-settled that a non-attorney parent may not bring an action pro se on behalf of his or her minor child. See *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.")

Plaintiff's remedy, if any, is to challenge those decisions in state court pursuant to N.Y. C.P.L.R. Article 78 ("Article 78"). Plaintiff opposes on the basis his claims are premised upon violations of § 1983. While Plaintiff does not formally seek review of the administrative decision, the factual allegations suggest otherwise.

Article 78 is purely a state procedural remedy. *Camacho v. Brandon*, 56 F. Supp. 2d 370, 380 (S.D.N.Y.1999). It provides a summary mechanism for challenging decisions issued by a state administrative agencies. See, *Liotta v. Rent Guidelines Board*, 547 F. Supp. 800, 802 (S.D.N.Y. 1982). It affords an aggrieved party the ability to challenge an administrative determination on the grounds that it "was made in violation of lawful procedure, was affected by an error of law, arbitrary and capricious, an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed," or not supported by substantial evidence. N.Y. C.P.L.R. 7803; see also *Pell v. Bd. of Ed. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester Cty.*, 34 N.Y.2d 222, 231 (1974) (internal citations omitted).

District Courts in this Circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims. See *DeJesus v. City of New York*, No. 10 Civ. 9400, 2012 WL 569176, at *4 (S.D.N.Y. Feb. 21, 2012) ("Article 78 is not in and of itself a cause of action, but a procedure best suited for state courts. Recognizing state courts' exclusive jurisdiction over Article 78, courts within this circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims.") (footnote omitted); *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) ("The cases that have addressed the issue have consistently declined to exercise supplemental jurisdiction over Article 78 claims."); *Camacho*, 56 F. Supp. 2d at 380, on reconsideration in part, 69 F. Supp. 2d 546 (S.D.N.Y. 1999) ("[W]e see no reason

to exercise [the court's] discretion [over Plaintiff's Article 78 claim] by adjudicating a purely state procedural remedy"); *Lucchese v. Carboni*, 22 F. Supp. 2d 256, 258 (S.D.N.Y. 1998) ("Article 78 proceedings were designed for the state courts, and are best suited to adjudication there. Because of the differences between an Article 78 claim and a civil claim typically brought in this Court, I find that the Article 78 proceeding[s] should be brought in the appropriate forum—state court.") (internal citations omitted); *Herrmann v. Brooklyn Law School*, 432 F. Supp. 236, 240 (E.D.N.Y. 1976) ("[T]his special proceeding designed to accommodate … the state court system is best suited to that system."); see also *Beckwith v. Erie County Water Auth.*, 413 F. Supp. 2d 214, 226-27 (W.D.N.Y. 2006) ("[T]his court has no original or supplemental subject matter jurisdiction over [plaintiff's] Article 78 proceeding as neither federal nor New York state law empower the federal courts to consider such claims, and, under New York law, authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in New York Supreme Court"); *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (Article 78 claim "must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims."). This has been the case even where there are surviving federal claims. See *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("[F]ederal courts are loath to exercise jurisdiction over Article 78 claims. Even where a plaintiff has one or more federal claims still alive … the interests of judicial economy are not served by embroiling this court in a dispute over local laws and state procedural requirements."); see also *Camacho*, 56 F. Supp. 2d at 373-74, 380 (dismissing Article 78 claim despite pending federal claim); *Lucchese*, 22 F. Supp. 2d at 257-258 (same).

To the extent federal courts have the authority to exercise supplemental jurisdiction over an Article 78 claim, they have discretion to "decline to [do so]… [if there are] compelling

reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The prevailing position among New York federal district courts is that "[t]he very nature of an Article 78 proceeding presents such compelling reasons." *Flanagan v. N.Y. City Dep't of Educ.*, No. 13-CV-8456, 2015 WL 11142630, at *17 (S.D.N.Y. Aug. 21, 2015). This is because "[a]n Article 78 proceeding is a novel and special creation of state law, [that] differs markedly from the typical civil action brought in federal district court in a number of ways …. [as a] purely state procedural remedy." *Morningside Supermarket Corp. v. N.Y. State Dep't of Health*, 432 F. Supp. 2d 334, 346-47 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). For these reasons, Plaintiff's claims under Article 78, seeking to challenge the WCDCP violations, fines and agency determinations are dismissed from this action without prejudice.

Defendants move to dismiss all claims asserted as against WCDCP on the basis it is not a proper party. Generally, municipalities are included among those persons or entities to whom § 1983 applies. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978). Under New York law, a county is a municipal corporation capable of suing and being sued. See N.Y. Gen. Mun. Law § 2. The municipality involved in this action is Westchester County, who is not named as a defendant. An agency, such as the WCDCP, which is an administrative arm of Westchester County, does not have a legal identity separate and apart from the municipality, and is not subject to being sued. See *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); *Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 438 (S.D.N.Y. 2012). In order to "prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality

caused the constitutional injury."[13] *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir.2008)

citing Mon*ell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91 (1978). No such claims are

asserted as against Westchester County. Accordingly, the motion to dismiss any and all claims

asserted against WCDCP, who is not a proper party, must be granted.

Defendants also move to dismiss Plaintiff's 42 U.S.C. § 1983 claims seeking monetary

damages against them in their official capacity. "[T]he Second Circuit has held that '[t]o the

extent that a state official is sued for damages in [his] official capacity, such a suit is deemed to

be a suit against the state, and the official is entitled to invoke the Eleventh Amendment

immunity belonging to the state.'" *Davis v. Westchester Cty. Family Court*, No. 16-CV-9487,

2017 WL 4311039, at *6 (S.D.N.Y. Sept. 26, 2017) quoting *Gan v. City of New Yor*k, 996 F.2d

522, 529 (2d Cir. 1993). Generally, "[a]bsent waiver or abrogation, the Eleventh Amendment

bars suits brought in federal court against a state by the state's own citizens" and "forbids suits

against states for monetary damages." *Kirkendall v. Univ. Of Connecticut Health Ctr.*, 205 F.3d

1323 (2d Cir. 2000) (internal citations omitted). Thus, Plaintiff's claims for monetary damages

against Defendants in their official capacity are dismissed with prejudice.

Plaintiff asserts his renewal license was denied as reprisal for opposing violations and

fines issued by WCDCP, and for filing or defending lawsuits involving former clients. Plaintiff's

allegations suggest he was denied a renewal license, singled out, in retaliation for availing

himself of judicial and quasi-judicial proceedings and remedies. Interpreting Plaintiff's

retaliatory claims liberally, they may be said to be premised upon the Fourteenth Amendment.

Defendants move to dismiss said claims on the basis of legal insufficiency and that retaliation is

---

[13] Plaintiff does not allege that a municipal policy caused him "constitutional injury."

not actionable under the Fourteenth Amendment. For the following reasons the motion is granted.

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta,* 221 F.3d 329, 337 (2d Cir. 2000) (internal quotations marks omitted) quoting *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). There are several ways a plaintiff may plead an equal protection violation. *Id.* First and foremost, "[a] plaintiff could point to a law or policy that expressly classifies persons on [an improper basis]." *Id.* Alternatively, a plaintiff could identify a facially neutral law or policy that "has been applied in an intentionally discriminatory manner" or that "has an adverse effect and . . . was motivated by discriminatory animus." *Id.* Here, Plaintiff fails to plead sufficient facts to make any such showing.

Typically, claims of retaliation are brought under the First Amendment, and have also been brought under Title VII (claims of retaliation for complaints about racial discrimination are cognizable under 42 U.S.C. § 2000e–3(a)). See *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir. 1996) (internal citations omitted). Research has failed to uncover any court that has recognized a claim for retaliation under the equal protection clause following a claimant's complaints of discrimination or adverse treatment. *Id.* Accordingly, for all the reasons given, Plaintiff's retaliation claim premised on equal protection must be dismissed.

To the extent Plaintiff's allegations may be interpreted to assert a First Amendment retaliation claim, said claim would also fail. To state a claim for retaliation under the First Amendment, plaintiff must allege (1) that he participated in a protected activity known to the

defendant; (2) the defendant took adverse action against him; and (3) a causal connection between the protected activity and the adverse action taken by the defendant. *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir. 2004) (internal citations omitted); *see also Dolan v. Connolly,* 794 F.3d 290, 294 (2d Cir. 2015). In determining whether a proper claim has been asserted, courts undertake a two-step inquiry: Whether the plaintiff engaged in the protected activity as a private citizen and whether the protected activity is a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006) citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.,* 391 U.S. 563, 568 (1968).; *see also Jackler v. Byrne,* 658 F.3d 225, 235 (2d Cir. 2011). While it is undisputed that defending and filing lawsuits is a constitutionally protected activity (*Murray v. RC II Nephew,* No. 13-CV-1056, 2015 WL 1730178, at *7 (N.D.N.Y. Apr. 14, 2015) citing *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996) (the right to petition the government for redress of grievances in both judicial and administrative fora is "among the most precious of the liberties safegarded by the Bill of Rights")), the nature of Plaintiff's lawsuits were personal (monies due for services delivered) and not of public concern.

To establish the causation element of a First Amendment retaliation claim, a plaintiff must demonstrate that the protected activity was a substantial motivating factor in the adverse government action. See *Nagle v. Marron,* 663 F.3d 100 (2d Cir. 2011). Here, Plaintiff has failed to assert any facts indicative of a retaliatory motive. *See Burton v. Lynch,* 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009). Motive is typically established circumstantially by showing the temporal proximity between the protected activity; and or a statement by the defendant(s) concerning his motivation. *Baskerville v. Blot,* 224 F. Supp. 2d 723, 732–33 (S.D.N.Y. 2002) citing *Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995). The facts asserted show a significant temporal gap between the protected activity (the lawsuits in 2006, 2008 and 2011) and the adverse action (the

March 2014 application denial) which is insufficient to demonstrate a causal connection.[14] e.g. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Defendants move to dismiss Plaintiff's conspiracy claims on the basis of legal insufficiency. To assert a § 1983 conspiracy claim, Plaintiff must allege facts to support the existence of (1) an agreement between two or more state actors or between a state actor and a private entity; (2) an act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307 (2d Cir. 2002); see also *Albritton v. Morris*, No. 13-CV-3708, 2018 WL 1690526, at *18 (S.D.N.Y. Mar. 29, 2018) (internal quotation omitted). A § 1983 lawsuit alleging a civil rights conspiracy will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action, the violation of a federal right. 42 U.S.C.A. § 1983; *Walker v. Tormey,* 178 F. Supp. 3d 53 (N.D.N.Y. 2016) citing *Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ali v. Ramos*, No. 16-CV-01994, 2018 WL 1353210, at *6 (S.D.N.Y. Mar. 14, 2018); see also *Ciambriello*, 292 F.3d at 324–25 (noting that a complaint must allege facts demonstrating that the parties acted in concert to state a claim for conspiracy). Courts, however, recognize that "conspiracies are by their very nature secretive operations," and may have to be proven by circumstantial, rather than direct, evidence. *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994).

Plaintiff strings together instances of multiple interactions with employees of the WCDCP occurring from 2006 through 2016. In several of the interactions, Plaintiff or Plaintiff's

---

[14] While Plaintiff also sites to several other incidents of misconduct by Defendants, they occurred subsequent to the denial of the renewal application.

business entity wrongfully received summons and fines for improperly conducting his landscaping business. On at least two occasions, after lawfully filing suit in small claims court to collect monies owed from former customers, he was threatened and intimidated by WCDCP employees to drop the lawsuit. On one occasion he was improperly fined for defending a small claims action. And lastly, he alleges he was wrongly denied his renewal license. Such allegations are sufficient to demonstrate an overt act(s) in furtherance of causing harm to Plaintiff.

The allegations of a conspiracy, however, are framed in broad language without any specificity.[15] Plaintiff is obligated to do more than merely assert vague and conclusory allegations in support of the existence of a conspiracy. See *Powell v. Workmen's Comp. Bd. of State of N. Y.*, 327 F.2d 131, 137 (2d Cir. 1964). Accordingly, the conspiracy claims are dismissed without prejudice.

Defendants move to dismiss Plaintiff's Fourteenth Amendment due process claim on the basis the allegations fail to state a claim. When a plaintiff alleges violations of procedural due process "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). To determine whether the Plaintiff has a valid Section 1983 due process claim, the Court applies a two-step inquiry: (1) whether the Plaintiff possesses a liberty or property interest and, if so, (2) what process he is due before he can be deprived of that interest. See *Ciambriello*, at 313; *Bryant v. N.Y. State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012)

---

[15] To support his claim of a conspiracy, Plaintiff asserts the following conclusory statements: "Defendants maintain a vindictive 11 year bias against Plaintiff;" "Hashmall wrote a sham decision to please and gain continued favor with the WCCP [Westchester County Department of Consumer Protection] and Defendant conspirators;" "Kramer was the equivalent of a police partner to Cassels;" "Kramer and Cassels run the show behind the curtain at WCCP;" and "Inspector Tony Pruit, in an effort to please WCCP, Cassels, Kramer, and conspirators, issued Plaintiff a violation for operating a home improvement business without a license."

The threshold issue is whether Plaintiff has a property interest, protected by the constitution, to a home improvement license. "While property interests are constitutionally protected, they are not generally constitutionally established; rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005) (internal quotation marks omitted). A plaintiff has a property interest if he or she can "demonstrate that state law confers 'a legitimate claim of entitlement'" to a benefit. *Id.*

"When determining whether a plaintiff has a claim of entitlement, [courts] focus on the applicable statute, contract or regulation that purports to establish" it. *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 381 (S.D.N.Y. 2014) citing *Brown v. New York*, 975 F. Supp. 2d 209, 242 (N.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir.1 994)). The key to determining the existence of a property interest is the extent to which the deciding authority may exercise discretion in reaching its decision rather than on the estimate of the likelihood of a certain decision. See *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 132–33 (2d Cir. 1998); *Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995), cert. denied, 515 U.S. 1131(1995); *RRI Realty Corp. v. Inc. Village of Southampton*, 870 F. 2d 911, 918 (2d Cir. 1989). "If the governing body has discretion in deciding whether to issue the permit, the federal courts will not sit as a superseding body to local administrative agencies." *Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 377 (E.D.N.Y. 2001) citing *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995).

Westchester County home improvement licensing is governed by the Westchester County Consumer Protection Code ("WCCPC") and the Westchester County Administrative Code ("WCAC"). Article XVI, Section 863.313(1) of the WCCP provides that all persons[16] engage in the home improvement business within the county must be licensed.[17] Upon receipt of a proper application, the "Sealer" of WCDCP shall have ninety days to grant or deny the application. Section 863.316(1). The application may be denied upon a determination that the applicant is not financially responsible, unqualified to engage in the home improvement business, has made a materially false statement in the application, has outstanding home improvement business related judgments against it, or it has an unacceptable amount of complaints against it. *Id.* Within thirty (30) days after a denial of an application, the applicant, upon written demand, shall be entitled to a hearing before the Sealer. Section 863.316(2). A hearing, on the record shall be held by the Sealer (or its designee), the applicant may be represented by counsel, evidence in support of the application may be introduced but compliance with the technical rules of evidence shall not be required. *Id.* Any determination made by the Sealer is "subject to judicial review in accordance with Article 78 of the [New York] Civil Practice Law and Rules in a proceeding brought within four (4) months after the determination is rendered." *Id.*

A review of the relevant home improvement licensing scheme reveals, WCDCP retains considerable discretion in issuing a license. Among the facts that may be considered is whether the applicant is financially responsible, unqualified to engage in the home improvement business, has made a materially false statement in the application, has outstanding home improvement business related judgments against it, or it has an unacceptable amount of complaints against it.

---

[16] According to Section 863.312(8), a person is defined as an individual, firm, company, partnership, association, corporation or other business entity.

[17] According to Section 863.312(2)((l), landscaping and gardening is included within the definition of "Home Improvement."

Section 863.316(1). The list appears to be all encompassing. A new or renewal applicant may be denied a license based on multiple subjective criteria. See, *Moerdukhaev v. Daus*, 457 Fed. App'x 16 (2d Cir. 2012). While the prospect of a future license may not rise to the level of a property interest, once a license is issued, the continued possession of the license may become so essential in Plaintiff's pursuit of a livelihood to such a degree that it may not be taken away without the procedural due process protections required by the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 539 (1971) citing *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969). Defendants herein concede Plaintiff has a property interest in the home improvement license.

Defendants, however, assert Plaintiff was provided adequate procedural remedies warranting dismissal of his due process claims. Unlike the existence of a property interest, which finds its origins in state law, procedural requirements are a matter of federal law. *Ciambriello*, 292 F.3d at 307. "The essential requirements of due process ... are notice and an opportunity to respond." *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 612 (E.D.N.Y. 2011) quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); see also, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (A necessary principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case"). Here, Plaintiff alleges he received notice of his initial denial, requested and was granted a hearing, and following the hearing was again denied his renewal application.

Under Federal law, all the Due Process Clause requires is that the method and form of the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339

U.S. at 314. "There is 'no rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions.'" *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956).

Defendants argue that Plaintiff is precluded from asserting a procedural due process claims because he has an adequate state procedure available and he failed to avail himself of that procedure. Plaintiff does not call into question the county or state procedures but rather asserts that the acts, individually and collectively, of the WCDCP employees serve to deprive him of procedural due process. "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) *citing Hudson v. Palmer*, 468 U.S. 517, 532 (1984). When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992); see also *Hudson,* 468 U.S. at 533 (explaining that when deprivations are "random and unauthorized ... predeprivation procedures are simply impracticable since the state cannot know when such deprivations will occur" (internal quotation marks omitted)).

Article XVI, Section 863.316(2) of the WCCP provides that any determination made by the Sealer (in other words, the WCDCP) is "subject to judicial review in accordance with Article 78 of the [New York] Civil Practice Law and Rules in a proceeding brought within four months after the determination is rendered." Article 78 has been deemed to provide a sufficient post-deprivation remedy involving claims against state employee conduct which is random and

unauthorized. *Hellenic Am. Neighborhood Action Comm,* 101 F.3d at 881 (internal citations omitted). Accordingly, Plaintiff's procedural due process claims are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as follows: all claims asserted on behalf of BSL (and its predecessor BL) and all claims seeking administrative review, pursuant to NYS Article 78, are dismissed without prejudice; all claims asserted against WCDCP, an improper party, and against the named defendants in their official capacity are dismissed with prejudice; Plaintiff's Fourteenth Amendment and retaliatory claims premised upon the Fourteenth Amendment are dismissed; and Plaintiff's retaliatory claim premised on the First Amendment is dismissed without prejudice.

Plaintiff shall have until July 20, 2018 to file an amended complaint in accordance with this Court's decision. Because the Court has dismissed the entirety of Plaintiff's current Complaint, failure to timely file an amended complaint will result in the dismissal of this action. If Plaintiff elects to timely file an amended complaint, Defendants shall answer or seek a pre-motion conference on any potential motion to dismiss by August 20, 2018.

The Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 10.

Dated:   June 18, 2018                     SO ORDERED:
        White Plains, New York

NELSON S. ROMÁN
United States District Judge